ERNEST W. LARKIN, III, Plaintiff v. MARY JO TATUM LARKIN, Defendant

No. COA03-1091

(Filed 20 July 2004)

**1. Divorce— equitable distribution—joint account—spent to zero during separation—distributional factor**

An equitable distribution order was remanded where the trial court found that a bank account was marital but that it would be inequitable to distribute it because the parties had spent the account down to zero during the separation. The court was required to distribute the account equitably once it was classified as marital and valued as of the date of separation; however, the court can consider post-separation withdrawals as a distributional factor.

LARKIN v. LARKIN

[165 N.C. App. 390 (2004)]

**2. Divorce— equitable distribution—amounts withdrawn from joint account—children's education**

The trial court did not abuse its discretion in an equitable distribution action by not imputing to plaintiff amounts withdrawn from a capital account. The money was used to realize the parties' joint intent in funding their children's college educations.

**3. Divorce— attorney fees—partial award—alimony and equitable distribution**

The award of only partial attorney fees in an equitable distribution action was not an abuse of discretion where the court based its decision on the distribution of assets and the amount of alimony awarded.

Judge TIMMONS-GOODSON concurring in part and dissenting in part.

Appeal by defendant from an order entered 3 January 2003 by Judge P. Gwynett Hilburn in Pitt County District Court. Heard in the Court of Appeals 24 May 2004.

*McCotter, Ashton & Smith, P.A., by Rudolph A. Ashton, III and Terri W. Sharp; Dallas Clark, Jr., for plaintiff-appellee.*

*Ward and Smith, P.A., by Cindi M. Quay, John M. Martin and Benton L. Toups, for defendant-appellant.*

HUNTER, Judge.

Mary Jo Tatum Larkin ("defendant") appeals from an "Equitable Distribution Judgment and Alimony Order" filed 3 January 2003. Because we conclude the trial court failed to equitably distribute all of the marital property at issue, we remand this case in part.

Defendant and Ernest W. Larkin, III ("plaintiff") were married on 28 December 1968, separated on 12 March 2000, and divorced on 6 June 2001. As of the date of separation, there were two living children born of the marriage who were both over the age of eighteen and emancipated. During their marriage, the parties established a Wachovia joint checking account, which on the date of separation had a value of $44,739.52. Following the parties separation, plaintiff continued to deposit his entire monthly income totaling $15,715.18 per month into the Wachovia account. Both parties used the funds in

this account to pay for various expenses for themselves and their children, without any accounting to each other.

In January 2001, plaintiff ceased depositing his monthly income into the Wachovia account, and the parties subsequently entered into an agreement whereby plaintiff paid defendant post-separation support. Both parties continued to use the Wachovia account until the balance was zero, which occurred on or about 18 June 2001.

During their marriage, the parties also established an Aintree Capital Account, which on the date of separation was valued at $424,950.23. Plaintiff testified at trial that the funds in this account were intended to be used to ensure that the parties could pay for their children's college education. Following the parties separation, plaintiff, without informing defendant, withdrew funds totaling $198,004.00 from this account to pay for federal income tax liability on the parties' 2000 joint income tax return, college tuition for the parties' children, and a car for their son.

In her counterclaim, defendant made a claim for attorneys' fees pursuant to N.C. Gen. Stat. § 50-16.4, and plaintiff, in his reply, admitted that "[d]efendant is an interested party and is acting in good faith. Defendant has insufficient means with which to subsist during the pendency of and to pursue this action. Defendant is in need of an award of counsel fees . . . ."

In its 3 January 2003 order, the trial court made the following pertinent findings of fact.

20. . . . Plaintiff and [d]efendant stipulated to the identification and date of separation net value of all property acquired during the marriage and in existence as of the date of separation as follows:

. . . .

l. Joint Wachovia Interest Checking Account . . .—Forty-Four Thousand Seven Hundred Thirty-Nine and 52/100 Dollars ($44,739.52) . . . .

m. Aintree Capital Account . . .—Four Hundred Twenty-Four Thousand Nine Hundred Fifty and 23/100 Dollars ($424,950.23).

. . . .

23. After the date of separation, [plaintiff] continued to deposit his entire income into the Wachovia joint account.

Plaintiff and [d]efendant continued to use the joint account as they had during the marriage. Plaintiff and [d]efendant used this joint account to pay for their personal monthly living expenses, without accounting to the other, for one year after the date of separation. Plaintiff stopped depositing his monthly income in the joint account in the early part of 2001. . . . As of [18 June] 2001, the balance of the Wachovia joint account was zero (0). Since the date of separation account balance was used by the parties for their support and expenses after the date of separation, and since [p]laintiff deposited his post-date of separation separate earnings into this account for the use, without accounting, by each party, the [trial court] finds it is not equitable to distribute the date of separation balance to either [p]laintiff or [d]efendant.

24. As of the date of separation, the Aintree Capital Account . . . had a balance of Four Hundred Twenty-Four Thousand Nine Hundred Fifty and 23/100 Dollars ($424,950.23). Subsequent to the date of separation, neither party made any further contributions to this account. This account did experience passive appreciation and depreciation after date of separation, and the passive appreciation and depreciation constitutes divisible property. However, subsequent to the date of separation, [p]laintiff made the following withdrawals from this account:

a. A withdrawal of Fifteen Thousand Nine Hundred Three and No/100 Dollars ($15,903.00) to pay federal income taxes due for the tax returns filed jointly by the parties for 2000.

b. Withdrawals totaling One Hundred Sixty-Six Thousand Six Hundred Thirty-Four and No/100 Dollars ($166,634.00) to pay for the college tuitions and related expenses for both children.

c. A withdrawal of Fifteen Thousand Four Hundred Sixty-Seven and No/100 Dollars ($15,467.00) to purchase a car for their son . . . .

At the hearing, [d]efendant contended that the post-separation withdrawals made by [plaintiff] should be treated as distributions to him. However, because [p]laintiff and [d]efendant acknowledged that the education of their children was a top priority and [p]laintiff had planned to use the assets in this account and other assets acquired during the marriage for the education of the children, and because one of the post-date of separation withdrawals was used to pay the 2000 income tax liability for

their joint federal tax return, and one was for a car for the son's use at college, the date of separation balance of the Aintree account should be reduced by the post-separation withdrawals made by [plaintiff] for education payments, for payment of tax joint liability, and for purchase of a car for their son, and the distribution value is, therefore, One Hundred Eighty Thousand Seven Hundred Twenty-Four and 84/100 Dollars ($180,724.84).

. . . .

30. The following distributional factors have been considered:

. . . .

g. The use of the marital funds in the Aintree Capital Account for payment of college expenses for the children and the 2000 joint income tax liability.

. . . .

48. . . . In her Counterclaim, [defendant] included a claim for counsel fees . . . . In his Reply, [plaintiff] admitted that [defendant] was an interested party acting in good faith, had insufficient means with which to subsist during the pendency of and to pursue her claims, and that she was in need of an award of counsel fees.

49. . . . However, based on the amount of permanent alimony hereinafter awarded and based upon the division of marital and divisible property as hereinafter awarded, [d]efendant will have the ability to pay her counsel fees and expenses associated with her alimony claim, and, in the [trial court's] discretion, no award of counsel fees should be made. However, [d]efendant's counsel was instructed to prepare the final order pertaining to the award of permanent alimony. . . . Based upon the complexity of this Judgment and Order, and the substantial revisions which were necessary, the amount of time spent by [d]efendant's counsel in the preparation and revisions of the Judgment and Order is reasonable and the amount of fees are reasonable. [Plaintiff] has the ability to pay [d]efendant's counsel fees incurred for the preparation of the Order.

The trial court concluded that an equal distribution was equitable and ordered a corresponding distribution of the parties' marital and divisible assets. In addition, plaintiff was ordered to pay permanent alimony of $6,669.00 per month, made retroactively effective to 1

March 2001 resulting in a retroactive alimony payment of $43,236.00. Plaintiff was also ordered to pay part of defendant's attorneys' fees in the amount of $4,375.00.

The issues are whether the trial court erred: (I) in equitably distributing the marital property by (A) improperly valuing the Wachovia account, (B) failing to distribute the Wachovia account, and (C) failing to distribute the entire date of separation value of the Aintree Capital Account by subtracting the amount of plaintiff's withdrawals; and (II) by failing to award full attorneys' fees to defendant.

I.

In an equitable distribution proceeding, a trial court is required to conduct a three-step analysis: "(1) to determine which property is marital property, (2) to calculate the net value of the property, fair market value less encumbrances, and (3) to distribute the property in an equitable manner." *Beightol v. Beightol*, 90 N.C. App. 58, 63, 367 S.E.2d 347, 350 (1988). "The distribution of marital property is vested in the discretion of the trial courts and the exercise of that discretion will not be upset absent clear abuse." *Id.* at 60, 367 S.E.2d at 348. "In order to reverse the trial court's decision for abuse of discretion, we must find that the decision was unsupported by reason and could not have been the result of a competent inquiry." *Id.* "Accordingly, the findings of fact are conclusive if they are supported by any competent evidence from the record." *Id.*

A.

Defendant argues that the trial court erred in its valuation of the Wachovia account by not making a valuation of the account on the date of separation, but instead using the zero balance of the account on the date of distribution. The trial court's findings, however, based upon the stipulation of the parties, reveal that the trial court did indeed value the Wachovia account on the date of separation at the amount of $44,739.52. Thus, the trial court did not err in its valuation of the Wachovia account.

B.

[1] The trial court, despite its valuation of the Wachovia account, nevertheless found that it would not be equitable to distribute the date of separation balance to either plaintiff or defendant because the account balance was zero at the time of distribution. Defendant contends the failure to distribute the Wachovia account was error.

In this case, with regard to the Wachovia account, the trial court found that after the date of separation, the parties continued to use the account as they had during their marriage. Plaintiff would deposit his monthly income into the account and both parties would use the account to pay for various expenses for themselves and their children without any accounting to each other. Both parties continued to use funds from the account after plaintiff ceased making deposits until the account balance was zero. The trial court's evidentiary findings regarding the post-separation use of the account by the parties are supported by the undisputed evidence in the record. Thus, it is apparent that both parties contributed to the depletion of the Wachovia account after the date of separation, ultimately using the marital funds that were in the account prior to the parties separation. Furthermore, the evidence of record is insufficient to trace out which party was responsible for what portion of the depletion of the funds in the account and neither party made any accounting to the other for their expenditures.[1]

The trial court found that it would not be equitable to distribute the date of separation balance in the Wachovia account to either party and failed to include the Wachovia account in its distribution of marital assets. Once, however, the trial court classified the Wachovia account as a marital asset and valued the account as of the date of separation, the trial court was required to distribute that account equitably. *See Khajanchi v. Khajanchi,* 140 N.C. App. 552, 557, 537 S.E.2d 845, 849 (2000) ("court must distribute the marital property and debts in an 'equitable' manner"); *see also* N.C. Gen. Stat. § 50-20(a) (2003) (court shall provide for an equitable distribution of marital and divisible property between the parties).

Thus, because the Wachovia account was a marital asset, which the trial court was required to equitably distribute, the trial court erred by failing to distribute that account. Accordingly, we must remand this case to the trial court for further findings of fact in order for the Wachovia account to be included in the equitable distribution of the parties' marital and divisible assets.[2] *See* N.C. Gen. Stat. § 50-20(a).

1. The only evidence presented on this issue consisted of testimony about several bank statements covering only a portion of the time during which both parties used the account and further testimony about various individual expenditures.

2. Furthermore, the parties' active post-separation diminution of the Wachovia account could not be considered as divisible property. *See* N.C. Gen. Stat. § 50-20(b)(4)(a). Thus, the trial court could not consider the parties' withdrawals from the Wachovia account in either classifying or valuing the marital

LARKIN v. LARKIN

[165 N.C. App. 390 (2004)]

We note that although the trial court, in revisiting its findings of fact, is required to distribute the marital and divisible assets, it retains the discretion to determine *how* to equitably distribute those assets. *See Beightol*, 90 N.C. App. at 60, 367 S.E.2d at 348. This determination may be made by considering the various distributional factors contained in N.C. Gen. Stat. § 50-20(c). *See* N.C. Gen. Stat. § 50-20(c). Under N.C. Gen. Stat. § 50-20(c)(11a), a trial court is permitted to consider as a distributional factor "[a]cts of either party to . . . devalue . . . the marital property . . . during the period after separation of the parties and before the time of distribution." N.C. Gen. Stat. § 50-20(c)(11a). As such, the trial court could properly consider the post-separation withdrawals from the Wachovia account by both parties as a distributional factor in determining what amount, if any, the parties should equitably receive from the account.[3]

C.

[2] Defendant additionally assigns error to the trial court's distribution of the Aintree Capital Account. The trial court valued this account as of the date of separation at $424,950.23, but in distributing this asset, subtracted the amounts withdrawn by plaintiff from the distributable amount. Defendant contends that notwithstanding the trial court's conclusion in this matter that an equal distribution was equitable, the trial court's failure to impute plaintiff's withdrawals from the Aintree Capital Account resulted in an unequal and inequitable distribution because plaintiff received the benefit of an additional $198,004.00, the total amount of his withdrawals. We disagree.

One of plaintiff's withdrawals from the Aintree Capital account was used to pay the parties' joint 2000 tax liability. Furthermore, with regard to the withdrawals made for tuition payments, the trial court found that prior to separation the parties intended the Aintree Capital Account to be utilized to ensure payment of their children's college expenses. These findings are supported by the evidence.

Plaintiff's remaining withdrawals were used expressly for this purpose by paying for both children's college tuition and a car to be used by their son while he was at college. Thus, the withdrawals were

property. However, the active post-separation diminution of the Wachovia account could be considered as a distributional factor under N.C. Gen. Stat. § 50-20(c).

3. The trial court did not consider the depletion of the Wachovia account by the parties as a distributional factor, presumably because it elected not to distribute the account at all.

used for the parties joint benefit in paying their joint tax liability and in realizing their joint intent for the Aintree Capital Account to be used for funding their children's college educations. Moreover, we note that, unlike the Wachovia account, the trial court expressly considered these withdrawals as a distributional factor in determining the proper distribution of the marital property.[4] Therefore, we conclude the trial court did not abuse its discretion by distributing the date of separation value of the Aintree Capital Account minus the withdrawals used to pay the parties joint tax liability and college education expenses for their children.

II.

**[3]** Defendant also argues that it was error for the trial court to not award her full attorneys' fees in her alimony action under N.C. Gen. Stat. § 20-16.4.

"A spouse is entitled to attorney's fees if that spouse is (1) the dependent spouse, (2) entitled to the underlying relief demanded (e.g., alimony and/or child support), and (3) without sufficient means to defray the costs of litigation." *Barrett v. Barrett*, 140 N.C. App. 369, 374, 536 S.E.2d 642, 646 (2000). Before granting an award of attorneys' fees, the trial court is required, as a matter of law, to determine whether the spouse seeking the award is the dependent spouse without sufficient means to subsist during the prosecution of the suit and to defray the necessary expenses. *Friend-Novorska v. Novorska*, 143 N.C. App. 387, 396-97, 545 S.E.2d 788, 795, *per curiam aff'd*, 354 N.C. 564, 556 S.E.2d 294 (2001). This means the dependent spouse must "be unable to employ adequate counsel in order to proceed as litigant to meet the other spouse as litigant in the suit." *Hudson v. Hudson*, 299 N.C. 465, 474, 263 S.E.2d 719, 725 (1980). "When an award of attorney's fees is properly awarded, the amount of the award is within the discretion of the trial court." *Friend-Novorska*, 143 N.C. App. at 397, 545 S.E.2d at 795.

---

4. The dissent "would hold that the trial court erred in valuing the Aintree Capital Account at the date of distribution rather than the date of separation." However, the trial court expressly valued that account, based on the parties stipulation, as of the date of separation in Finding of Fact 20(m). The trial court, in Finding of Fact 24, then made a separate finding to specifically reject defendant's argument that the withdrawals be treated as an advance on the marital estate to plaintiff and to explain in detail its rationale for the distribution of the Aintree Capital Account. Ultimately, though, the trial court, in its discretion, properly distributed the Aintree Capital Account by treating the withdrawals as a distributional factor as evidenced in Finding of Fact 30(g).

LARKIN v. LARKIN

[165 N.C. App. 390 (2004)]

In this case, defendant was the dependent spouse and entitled to alimony. Plaintiff furthermore admitted that defendant would have insufficient means to defray the costs of the suit. Defendant contends that despite her meeting these requirements, the trial court failed to award her attorneys' fees. We disagree.

An affidavit contained in the record and submitted to the trial court lists defendant's attorneys' fees in the amount of $14,498.48. The trial court, in fact, did make a partial award of defendant's attorneys' fees in the amount of $4,375.00 for the time it took defendant's attorney to draft the final order. The trial court based its decision to award only a portion of defendant's attorneys' fees on the amount of alimony awarded and the equitable distribution of assets to defendant. This included the equal distribution of the marital assets, as well as a permanent alimony award to defendant of $6,699.00 per month, for a total of $80,025.00 per year, plus an additional $43,236.00 in retroactive alimony. From this, the trial court, in its discretion, found that although defendant met the requirements to receive attorneys' fees under the statute, she did not require a full award of attorneys' fees to defray the costs of litigation. We therefore conclude the trial court did not abuse its discretion in setting the partial amount of attorneys' fees to be awarded to defendant.

Affirmed in part. Remanded in part.

Chief Judge MARTIN concurs.

Judge TIMMONS-GOODSON concurs in part and dissents in part in a separate opinion.

TIMMONS-GOODSON, Judge, concurring in part and dissenting in part.

While I agree with the majority's conclusion that the trial court did not err in valuing the Wachovia joint account or in awarding attorneys' fees but did err by failing to distribute the Wachovia joint account, I disagree with the majority's conclusion that the trial court did not err in its distribution of the Aintree Capital Account. Therefore, I respectfully concur in part and dissent in part.

On the date of separation between the parties in the instant case, the Aintree Capital Account had a balance of $424,950.23. Subsequent to the date of separation, the account experienced passive apprecia-

tion and depreciation. Neither party made any further contributions to the account subsequent to the date of separation. However, plaintiff withdrew from the account: (a) $15,903.00 to pay federal income taxes; (b) $167,634.00 to pay for the college tuition and expenses of the parties' children; and (c) $15,467.00 to purchase a car for the parties' son. Thus, on the date of distribution, the account had a balance of $180,724.84.

In its equitable distribution order, the trial court concluded that

because Plaintiff and Defendant acknowledged that the education of their children was a top priority and Plaintiff had planned to use the assets in [the Aintree Capital Account] and other assets acquired during the marriage for the education of the children, and because one of the post-date separation withdrawals was used to pay the 2000 income tax liability for their joint federal tax return, and one was for a car for the son's use at college, the date of separation balance of the Aintree account should be reduced by the post-separation withdrawals made by the Plaintiff . . . and the distribution value is, therefore, One Hundred Eighty Thousand Seven Hundred Twenty-Four and 84/100 Dollars ($180,724.84).

N.C. Gen. Stat. § 50-21(b) (2003) requires that marital property be valued "as of the date of separation of the parties." After the marital property is valued, N.C. Gen. Stat. § 50-20(c) (2003) requires that the trial court distribute the marital property equally unless the trial court determines that equal division is inequitable.

Unlike the majority, I believe the trial court in the instant case ignored the mandates of N.C. Gen. Stat. §§ 50-21(b) and 50-20(c) by distributing the Aintree Capital Account at its value on the date of distribution rather than the date of separation. Although the parties agreed prior to their separation that the Aintree Capital Account would be utilized to ensure payment of their children's college expenses, defendant did not expressly consent to or ratify plaintiff's withdrawals for this purpose subsequent to the date of separation, and plaintiff could not recall any specific conversations with defendant regarding the withdrawals prior to making them. As the majority correctly notes with respect to the Wachovia joint account, "[o]nce . . . the trial court classified the [Aintree Capital Account] as a marital asset and valued the account as of the date of separation, the trial court was required to distribute that account equitably." However, by valuing the Aintree Capital Account at the date of sepa-

ration but then dividing the property of the account based upon its value at the date of distribution, the trial court effectively decreased the statutorily proscribed value of the marital estate.

For the foregoing reasons, I would hold that the trial court erred in distributing the Aintree Capital Account at its value on the date of distribution rather than the date of separation.